Porter, J.
delivered the opinion of the court. This action is brought by Angelique Westover, wife of John Bredy, and by the children and heirs apparent of said John Bredy, viz. by Philip Bredy, by Marianne Bredy, and Rosalie Bredy, the two latter au-thorised by their husbands Auguste Daniel, and John Sassman.
They claim to be put in possession of a tract of land, belonging to their father, John Bredy, whom they state to have disappeared in the year 1805, without leaving any one charged with the management of his concerns.
And aver, that one Aimé and wife have illegally entered on, and taken possession of the premises, and though often requested, have refused to give them up.
*444 East’n District.
May, 1822.
who ⅛ °f since he came of don’on thT aC" ground that it
authoit^with-proceedWtoe’the moveabíe °parte accruedCtoeher°D
theTiresuSp«l hens, ⅛ receive who has^bap-sonannteresPter panakeSof°the reality.
The defendants pleaded the general issue. . . . prescription, collusion, and title through John Sassman, the husband of Rosalie Bredy, which title they assert he acquired from the other plaintiff’s in this suit. r
The fa<As of the case, so far as they are ne-cessary to be stated, are those which follow— j ^ Bredy disappeared in the year 1803. On the 15th of July, of that year, the comman-p second German coast, in obedience to an order of the governor, Don Man-uel Salcedo, made an inventory of his proPertJ5 and placed it in the hands of his wife f°r safe keeping. The 16th September, 1805. A- Westover’ Philip Bredy, and A. Daniel, ¿ j k Sassman, in right of their wives, Marianne Bredy, and Rosalie Bredy, petition-e<^ *he judge *° or(ler a sale of all the proPei'ty belonging to the absentee. A sale was ordered in the usual form, the parties giving security. On the 18th October, the same persons came before the judge, and by public act partitioned the land now claimed. Two ar-pents in front, with the ordinary depth, were allotted to Sassman, husband of Rosalie Bre-dy, for the sum of $1500; three to Auguste Daniel, husband of Marianne, for the same *445 price; and the remaining two to Philip Bredy, for $950; the act was not signed by Sassman’s wife, nor by Daniel’s. In a little more than two years after the division, Sassman sold the portion received by him, to one Francois Rulle, in whose right the defendants noAv claim it.
Philip Bredy was of the age of majority in July 1807, Marianne in July 1809, and Rosalie in the same month of the year 1811.
The main question for our consideration is the effect of this act of partition. It is insisted by the defendants, that it amounts to an alienation of all right which the plaintiff’s had in the premises.
It is replied that such is not its legal operation ; that the act is null and void ; that it is not binding on the wife, who, though she might have divided the land, had no right to sell it; that for the same reason it can have no effect against her children, and that as to them, it is null on another ground, they were minors, at the time it was made; and were not parties to the act.
When a person owning property in this state, does not appear at the place of his residence for five years, and has not been heard *446 of, Ins presumptive heirs may cause them» . . selves to be put in possession of the estate which belonged to him, and they enjoy a portion of the revenues on certain conditions.
Their right yields to the testamentary heirs, in case there are such, and both are postponed to the claim of the husband or wife, who may wish to continue the partnership, and have the benefit of the aquets and gains.— Civil Code, 16, art. 9, 11 and 13. But either wife or husband may have the community dissolved if they choose, and though the wife, in the first instance, desires to have it continued, she preserves the right of aftewards renouncing.
In the case now before us, there can be little doubt, that it was the intention of the wife of Bredy to dissolve the community. The question is, w hether that intention has been so carried into effect, as to be binding. The wife and children, it is said, could not sell the absentee’s property. This is true. But as the act contains evidence that they contemplated to sever their interests in the land nowy sued for, and as that act does divide it, and assign a portion to each, we must give the instrument effect, as far as the parties had le= *447 gaily a right to act on the subject matter; & J ° J ut res magis valeat, quampereat. The court re-cognised this principle, and acted on it in the case of Holmes vs. Patterson, 5 Martin, 693. According to Pothier, if heirs pass an act in relation to property, held in common between them, and declare that the one has sold to the other; though by the terms used, there is no doubt but it is a contract of sale; — néanmoins la jurisprudence a établi que nonobstant les termes de vente dans lesquels cet acte est concu, il ne devoit pos étre consideré comme un control de vente, mats comme un acte tenant lieu de partage. Pothier, Traité de vente, n. 643. The good sense of this doctrine is obvious, and its application to the case now before us complete.
The wife therefore cannot maintain an action for this property, nor can the son Philip, who has approved of the partition, since he came of age, by selling part of the land, and suffering ten years to elapse since the age of majority, without bringing suit.
The claims of the daughters, Marianne and Rosalie, have yet to be examined.
The right which they had as heirs apparent of their father, to enter into and enjoy a portion of the revenues or a portion of his es *448 tate, has been transferred by their husbands. It becomes, therefore, necessary to enquire if they had authority to do so. According to the case of Tregre vs. Tregre, 6 Martin, 665, the husband is authorised, without his wife, to proceed to the partition of the moveable part of a succession accrued to her, but not to that portion which is immovable. This part of the case then turns on ascertaining what species of property the wife had in that which was divided. It must be confessed, that it is somewhat anomalous, and that it is difficult to class it. To make it a deposit, as was contended, it must be shewn to be gratuitous. Civil Code, 410, art. 4, 9 Martin, 485. It is not a usufruct for the definition of that right, — is the enjoyment of a certain thing, the property of another, and drawing from the same, all profit, utility, and advantage, which it may produce. It is not a lease; for that is a contract by which one has the use of property for a certain rent to be paid. After as much reflection as we can bestow on the subject, we think it partakes more of the nature of a moveable, than an immovable. It is a right to receive money for a certain number of years, given by law, with a double object; to benefit the presumptive heir, and to compensate him for adminis *449 tering the estate of another. It can scarcely ... . . then be distinguished from interests which are certainly personal, money due for services, or rents and-annuities. Civil Code, 100, art. 25.
Hennen for the plaintiffs, Maznrcau for the defendants.
Under this view of the subject, the judgment of the district court must be reversed, and ours be for the defendant, with costs.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, that there be judgment for the defendants, with costs in both courts.